**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHONG LEE DAN,**

                                **Plaintiff,**

       **vs.**                                       **1:25-cv-00122**
                                                **(MAD/PJE)**

**KATHY HOCHUL,**
_Governor of New York_,

                                **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **CHONG LEE DAN**<br>Cairo, New York 12413<br>Plaintiff _pro se_ | |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorney for Defendant | **THOMAS A. CULLEN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on January 27, 2025, alleging thirteen causes of action against New York Governor Kathy Hochul after a traffic stop in Greene County, New York. Dkt. No. 1. He filed an amended complaint on February 5, 2025. Dkt. No. 7. On March 5, 2025, Plaintiff filed a motion for declaratory judgment regarding subject matter jurisdiction. Dkt. No. 11. On April 14, 2025, Defendant filed a motion to dismiss the amended complaint. Dkt. No. 17. On July 2, 2025, while the motion to dismiss and motion for declaratory judgment were still

1

pending, Plaintiff filed a motion for the Court to take judicial notice of excerpts from various sources of legal authority.  Dkt. No. 23.  The Court addresses these motions in turn.

## II. BACKGROUND

On March 15, 2024, Plaintiff visited a gas station in Cairo, New York, to purchase fuel for his 2005 Chevrolet Astro van.  Dkt. No. 7 at ¶¶ 15-16.  Plaintiff, who is homeless, sleeps in his van at night and has mailing addresses in Pennsylvania and Texas.  *Id.* at ¶¶ 47, 79.  He also adamantly insists that the van is not a "vehicle," as legally defined, and instead refers to it as "private property for personal, family, or household purposes . . . ."  *Id.* at ¶¶ 15, 63, 65. Likewise, Plaintiff maintains that his operation of the van does not amount to "driving."  *Id.* at ¶¶ 27-30.  Rather, according to Plaintiff, his operation of the van constitutes "traveling."  *Id.*  Thus, because Plaintiff purportedly *travels* in the van instead of *driving* it, and because the van is not a *vehicle*, Plaintiff argues that he does not need a valid driver's license or vehicle registration to operate the van in New York.  *Id.* at ¶¶ 25-35, 48.

As Plaintiff was preparing to enter the gas station's convenience store, Greene County Sheriff's Deputy Ryan Schrader approached Plaintiff.  Deputy Schrader told Plaintiff that the Maryland registration tag on the van was expired.  *Id.* at ¶ 19.  In response, Plaintiff told the deputy that the van was not required to have a valid registration tag.  *Id.* at ¶ 20.  Plaintiff also produced a document purportedly filed in the Caldwell County, North Carolina Register of Deeds, which Plaintiff quotes in the amended complaint.  *Id.* at ¶¶ 23-23.12.  That document claims to cite various federal statutes and regulations, the U.S. Constitution, and Supreme Court precedent for their interpretations of terms like "vehicle," "motor vehicle," "travel," and "drive." *Id.*  It also proclaims, "I believe anyone with an oath to support the Federal Constitution that fails to operate

the term 'motor vehicle' as constitutionally defined commits perjury of that oath and acts against Me without authority." *Id.* at ¶ 23.12.

After receiving the North Carolina document, Deputy Schrader told Plaintiff, "A driver's license and registration are required to drive in New York." *Id.* at ¶ 25. Plaintiff replied, "If you are driving, Officer." *Id.* at ¶ 26. The deputy responded, "I absolutely witnessed you driving." *Id.* at ¶ 27. Plaintiff claimed he was traveling, not driving, and challenged Deputy Schrader's understanding of the definition of "driving." *Id.* at ¶¶ 30-31. When Deputy Schrader asked whether Plaintiff had a valid driver's license, Plaintiff answered, "No, I do not because I don't need one." *Id.* at ¶ 35. He also repeatedly referred Deputy Schrader to the North Carolina document. *Id.* at ¶¶ 34, 38.

As the interaction wore on, Plaintiff and Deputy Schrader continued to disagree. Plaintiff asked Deputy Schrader, "Do you have any evidence that I am driving a motor vehicle as defined by the United States Code?" *Id.* at ¶ 48. The deputy answered in the affirmative, but when Plaintiff demanded evidence to that effect, Deputy Schrader did not respond. *Id.* at ¶¶ 49-51.

Eventually, Deputy Schrader reiterated to Plaintiff that "in New York State, you got [to] have a driver's license to operate a motor vehicle . . . [a]nd you also have to have a valid registration on [the] vehicle . . . ." *Id.* at ¶ 53. Because Plaintiff had neither, Deputy Schrader told him he could not operate the van on New York highways. *Id.* at ¶ 54. The deputy issued two citations to Plaintiff, and the van was towed. *Id.* at ¶¶ 55-56. The van's impoundment left Plaintiff without transportation or a place to sleep. *Id.* at ¶ 79. He then began living in a tent on some friends' property. *Id.* at ¶¶ 81-82.

Plaintiff pled not guilty to the ticketed violations. *Id.* at ¶ 90. The Cairo Town Court eventually dismissed the charges because Deputy Schrader did not provide a supporting

deposition. *Id.* at ¶ 92. Nevertheless, Plaintiff contends that he was wrongly denied the right to a hearing regarding seizure of his property. *Id.* at ¶ 94. He also unsuccessfully sought assistance from the Cairo Town Court, Greene County Public Defender, Greene County District Attorney, and other local officials to get his van back. *Id.* at ¶¶ 97-99. Plaintiff then attended a hearing with counsel for the county, where he claims the county attorney "engaged in frivolous arguments with the Plaintiff to confuse the commercial versus non-commercial use of the New York public roads." *Id.* at ¶¶ 107, 109.

On June 25, 2024, Plaintiff filed a document with the Greene County Clerk's Office, alleging a "seditious conspiracy to overthrow the Constitution and violate the Plaintiff's God-given rights." *Id.* at ¶ 111. He named twelve Greene County employees as co-conspirators and tried to contact the governor with a request for protection from the conspiracy. *Id.* at ¶¶ 111.1-111.12, 115. Plaintiff did not receive a response, and now believes that Governor Hochul is involved in the conspiracy. *Id.* at ¶ 116.

Plaintiff asserts thirteen causes of action against Governor Hochul: (1) deprivation of rights under 42 U.S.C. § 1983; (2) conspiracy to interfere with civil rights under 42 U.S.C. § 1985; (3) malicious prosecution under 42 U.S.C. § 1983; (4) failure to prevent a conspiracy to interfere with civil rights under 42 U.S.C. § 1986; (5) forced labor under 18 U.S.C. § 1589; (6) robbery under New York Penal Law § 160.10; (7) false imprisonment (without specifying whether the claim is civil or criminal); (8) coercion under New York Penal Law § 135.60; (9) official misconduct under New York Penal Law § 195.00; (10) libel; (11) slander; (12) assault under New York Penal Law § 120.00; and (13) intentional infliction of emotional distress ("IIED"). Dkt. No. 7. He seeks compensatory damages encompassing the daily average cost of a

van rental in New York,[1] the average cost of a room rental in Greene County, and his estimated lost earnings. *Id.* at 28. He also seeks $400,000 in punitive damages from Defendant, declaratory and injunctive relief against Defendant and several non-parties, and an award of attorney's fees. *Id.* at 29.

### III. DISCUSSION

**A.    Plaintiff's Motion for Declaratory Judgment**

In his motion for declaratory judgment, Plaintiff asks this Court to "stay all pleadings filed by the Defendant's attorney until proof of subject matter jurisdiction is placed on the Court record." Dkt. No. 11. Specifically, Plaintiff claims that "Defendant [Governor Hochul], with subordinate Agents and Agencies, was in want of subject matter jurisdiction in seizing Plaintiff's private property." *Id.* at 1. He writes that Defendant and her "subordinate Agents" had "three opportunities to provide evidence of subject matter jurisdiction to act against the Plaintiff and his private property[.]" Dkt. No. 11-1 at 2. The Court recognizes that because Plaintiff is *pro se*, his filings are entitled to a liberal construction and "must be held to less stringent standards than those drafted by an attorney." *Elmore v. Harriman*, No. 5:24-CV-186, 2025 WL 1682624, *4 (N.D.N.Y. June 16, 2025) (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012)).

As a baseline matter, declaratory judgments are a mechanism by which a court can "declare the rights and other legal relations of any interested party seeking such declaration . . . ." *Westcode, Inc. v. Mitsubishi Elec. Corp.*, 171 F. Supp. 3d 43, 47 (N.D.N.Y. 2016) (quoting 28 U.S.C. § 2201(a)). A district court can hear an action for declaratory relief if "such case presents an 'actual controversy.'" *Id.* (quoting 28 U.S.C. § 2201(a)). "To rise to the level of an actual

---

[1] Plaintiff does not mention whether he rented a van or attempted to operate a replacement van without a license.

controversy, the relief requested must be for 'a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Calderon v. Ashmus*, 523 U.S. 740, 746 (1998)).

Although Plaintiff labels his filing a "motion for declaratory judgment," it is unclear whether he actually wants the Court to declare anything. Rather, it seems he is asking the Court to stay the action until Defendant demonstrates that Deputy Schrader had authority to ticket Plaintiff and order the seizure of his van. Critically, however, acquiescing to Plaintiff's request would mean impermissibly reversing the recognized burden of proof. It is well established that in a civil action, the plaintiff bears the burden of alleging sufficient facts to support a claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when *the plaintiff* pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (emphasis added). In other words, the burden is on Plaintiff to allege facts tending to show that Defendant and Deputy Schrader did *not* have jurisdiction to ticket him and have his van seized. Plaintiff's *pro se* status does not shift or lessen this burden.

As to Plaintiff's repeated mentions of subject matter jurisdiction, that doctrine discusses whether *courts* have jurisdiction over certain cases. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). It does not discuss whether *parties or their agents* have authority to engage in certain conduct.[2]

_____

[2] Plaintiff reiterates the same arguments about subject matter jurisdiction in his response to Defendant's motion to dismiss. Dkt. Nos. 19, 19-1. The Court is aware of Plaintiff's petition for a writ of habeas corpus, which is appended to that response and incorporates those subject matter jurisdiction arguments. Dkt. No. 19-2. Again, the Court cannot impose upon Defendant a burden of proof wholly unsupported by the controlling law. Furthermore, "the privilege of habeas corpus entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (citation omitted). To be eligible for a writ of habeas corpus, a person must be in custody. *See* 28 U.S.C. § 2241(c). As Defendant points out, Plaintiff is not incarcerated. Dkt.

Accordingly, Plaintiff's motion for declaratory judgment is denied.

**B.    Plaintiff's Motion for Judicial Notice**

Plaintiff's motion for judicial notice is also subject to a liberal construction as a *pro se*

filing.  *See Elmore*, 2025 WL 1682624, at *4 (citing *Ahlers*, 684 F.3d at 60).  Federal Rule of

Evidence 201(b), which Plaintiff appears to rely upon in making this motion, allows a court to

"take judicial notice of facts outside the trial record that are 'not subject to reasonable dispute.'"

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.

1998) (quoting Fed. R. Evid. 201(b)).  To be eligible for judicial notice, a fact must be "generally

known within the trial court's territorial jurisdiction" or able to "be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

201(b).

Throughout the motion, Plaintiff cites various legal authorities—including the

Constitution, the federal Motor Carrier Act of 1935, the New York Vehicle and Traffic Law, a

New Hampshire bill, and a 1967 case from the New Hampshire Supreme Court—and draws

conclusions about how to interpret them.  Dkt. No. 23.  Although Federal Rule of Evidence 201

speaks of "adjudicative *facts*," not statements or conclusions of law, Fed. R. Evid. 201 (emphasis

added), it is not unheard of for a court to judicially notice the existence of operative legal

authorities, *see, e.g.*, *Wendel v. New York*, 500 F. Supp. 2d 172, 174 n.1 (E.D.N.Y. 2007) (taking

judicial notice of New York state statutes discussed in the opinion).  Importantly, however,

acknowledging the existence of an item is quite different from accepting the proponent's

interpretation of that item's truth.  *See Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70 ("A

_____

No. 20 at 5.  Thus, Plaintiff's petition for a writ of habeas corpus is without merit and hereby
denied.

court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings'") (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

In this case, judicial notice can only properly extend to the *existence* of the legal sources that Plaintiff mentions in and attaches to the motion. The legal authorities are readily accessible through the Court's research resources; therefore, the fact of their existence is not subject to reasonable dispute.[3] Thus, the Court grants Plaintiff's motion insofar as the legal authorities' existence.[4] The limited reach of judicial notice here does not change the Court's analysis of the remaining issues in this case.

**C.    Defendant's Motion to Dismiss the Amended Complaint**

Defendant's motion to dismiss alleges numerous deficiencies with Plaintiff's amended complaint, including failure to state a claim, failure to allege Governor Hochul's personal involvement in the challenged conduct, Plaintiff's lack of standing to bring criminal charges against Governor Hochul, and a lack of subject matter jurisdiction over certain claims due to Eleventh Amendment immunity. Dkt. No. 17-1.

### *1.    Eleventh Amendment Immunity and Lack of Subject Matter Jurisdiction*

---

[3] The Court emphasizes that parties can—and should—draw the Court's attention to legal authorities by citing them in their filings instead of moving for judicial notice of their existence.

[4] Plaintiff's motion also includes an attached document from Cairo Town Court regarding his two traffic citations, although the motion itself does not discuss that document. Dkt. No. 23 at 20. Because this document is hearsay if offered for its truth, the Court will not take judicial notice of its truth. *See* Fed. R. Evid. 801(c), 802. The Court acknowledges that Plaintiff discusses his traffic citations in his amended complaint, and when ruling on Defendant's motion to dismiss that pleading, the Court construes the factual allegations in the pleading as true. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Plaintiff is suing Governor Hochul in both her official and individual capacities. Dkt. No. 7 at ¶ 14. With regard to her official capacity, Defendant contends that the Eleventh Amendment requires dismissal of the civil claims against her.

As a threshold matter, if a federal court concludes that it lacks subject matter jurisdiction over a claim, it must dismiss that claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(b)(1). Likewise, "[t]he Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity." *Kilcher v. N.Y. State Police*, No. 1:19-CV-00157, 2019 WL 2511154, *3 (N.D.N.Y. June 18, 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984)). When a plaintiff sues a state official, Eleventh Amendment immunity depends on whether the suit is essentially against the state itself. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101. On that issue, this Court has recognized immunity for state officers, including governors, "who are sued in their official capacity." *Jemzura v. Pub. Serv. Comm'n*, 961 F. Supp. 406, 412 (N.D.N.Y. 1997).

However, this bar is not absolute. The narrow *Ex Parte Young* exception is sometimes available when a plaintiff sues a state officer in her official capacity for injunctive relief and "challeng[es] the constitutionality of a state official's actions in enforcing state law . . . ." *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 154 (1908)); *see also Anghel v. N.Y. State Dep't of Health*, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) (recognizing the same exception in suits for declaratory relief against a state officer in her official capacity). To determine whether the exception applies, courts "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *CSX Transp., Inc.*, 306 F.3d

at 98 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  This "does not include an analysis of the merits of the claim . . . ."  *Verizon Md., Inc.*, 535 U.S. at 646 (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).  However, Plaintiff must still sufficiently plead "plausible and nonconclusory factual allegations" to support application of the exception.  *Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, *1 (2d Cir. May 7, 2025).  Again, given Plaintiff's *pro se* status, the Court construes his pleading liberally.  *Elmore*, 2025 WL 1682624, at *4.

There is no indication that New York has consented to suit or that immunity has been waived by statute.  Thus, unless the *Ex Parte Young* exception applies, the Eleventh Amendment prevents this Court from exercising jurisdiction over Plaintiff's civil claims for monetary, injunctive, and declaratory relief against Defendant in her official capacity.

Although this Court has previously dismissed Plaintiff's contention that the van is not a "vehicle" as completely unmeritorious and unjustifiably misaligned with the law, *Dan v. New York*, No. 1:24-CV-1233, 2025 WL 2046169, *9-10 (N.D.N.Y. July 22, 2025), that determination is not dispositive of whether *Ex Parte Young* may apply in the present case.  Rather, the inquiry asks whether Plaintiff alleged an ongoing violation of federal law.  Plaintiff adamantly insists that Defendant, Deputy Schrader, and various Greene County employees violated his constitutional rights by claiming he needed a valid driver's license and registration, and that these misdeeds gave rise to a slew of other wrongs against Plaintiff.  *See, e.g.*, Dkt. No. 7 at ¶¶ 79 (describing Plaintiff's loss of transportation and shelter after the impoundment of his van), 85 (alleging that the conduct of Defendant and her "subordinate Agents . . . exacerbated" Plaintiff's precarious financial situation), 100 (describing the continued accrual of impound fees on Plaintiff's van), 221 (describing Plaintiff's long-term "shame, embarrassment, ridicule, and humiliation").  Thus, under

the relaxed standard for *pro se* pleadings, Plaintiff appears to have plausibly alleged a violation of his rights under the federal Constitution (again, the Court does not assess the merits of the claim at this juncture).

However, for *Ex Parte Young* to apply, Plaintiff also bears the burden of alleging sufficient facts to show that the violation is ongoing. A plaintiff can meet this burden by alleging "that he plans to engage in actions in the future" that will subject him to further misconduct from the defendant. *See Kelsey*, 2025 WL 1324213, at *2. "[C]onditional and speculative" claims of future consequences, absent a claim that the plaintiff intends to repeat his actions in the future, do not satisfy this standard under Second Circuit precedent. *See id.* Similarly, the Second Circuit has said that allegations of emotional injury and fear of "looming criminal penalties" do not satisfy the pleading standard. *Id.*

Here, Plaintiff primarily seeks recompense for actions that have already occurred: his (now dismissed) traffic citations and the impoundment of his van. He does not specifically allege that he intends to drive again without a license or registration in the future. Similarly, he does not claim that Defendant or any Greene County employee will ticket him again or re-impound his car. Rather, Plaintiff's amended complaint fixates on past occurrences, which are distinct from "ongoing violations of federal law." *Kent v. New York*, No. 1:11-CV-1533, 2012 WL 6024998, *5 (N.D.N.Y. Dec. 4, 2012) (distinguishing between "a continuous violation" of a plaintiff's constitutional rights and "a single act that continues to have negative consequences" for the plaintiff).

Even if Plaintiff alleged an ongoing violation of federal law, he would still need to state a claim for prospective relief. "Prospective relief includes injunctive relief that bars a state actor from engaging in certain unconstitutional acts or abates ongoing constitutional violations . . . " *Id.*

(quoting *Edelman v. Jordan*, 415 U.S. 651, 653 (1974)).  Plaintiff wants this Court to provide "[d]eclaratory and injunctive relief against the State of New York, County of Greene, and Town of Cairo[]" by "enjoining policies, practices, and customs to encourage the operating of the term 'motor vehicle' by no other definition than by United States Legislative Bills."  Dkt. No. 7 at 29. He also wants the Court to order Governor Hochul and New York to "institute policies, procedures, and training" to bring law enforcement agencies into compliance with the Constitution.  *Id.*  These requested actions mirror those in an earlier lawsuit almost exactly, which this Court denied as retroactive, rather than prospective.  *See Dan*, 2025 WL 2046169, at *3 n.5. The same conclusion is necessary here.

Accordingly, Plaintiff's first, second, third, fourth, tenth, eleventh, and thirteenth claims against Defendant in her official capacity must be dismissed for lack of subject matter jurisdiction.  If Plaintiff intended to allege his seventh cause of action as a tort, it must also be dismissed on this ground.[5]

### 2.  *Failure to State a Claim (Individual Capacity)*

As for Plaintiff's civil claims against Defendant in her individual capacity, Defendant contends that Plaintiff's claims must be dismissed because he fails to allege Governor Hochul's personal involvement in the challenged actions.  *See* Dkt. No. 17-1 at 14-17.  Plaintiff's civil rights allegations rest on three federal statutes: 42 U.S.C. §§ 1983, 1985, and 1986.  The first supports a civil action for the deprivation of rights.  The other two support causes of action for conspiracy to interfere with civil rights and failure to prevent such conspiracy, respectively.  He

---

[5] Plaintiff's seventh claim alleges false imprisonment.  His amended complaint fails to specify whether he raises that claim in the civil context or the criminal context.  *See* Dkt. No. 7.

also alleges libel, slander, and IIED under New York law. Additionally, Plaintiff lodges a claim of false imprisonment, although it is unclear whether he raises that claim as a tort or a crime.

### a.  Standard of Review

A motion to dismiss for failure to state a claim tests the "legal sufficiency" of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted); Fed. R. Civ. P. 12(b)(6). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference. *See id.* (quoting *Chambers*, 282 F.3d at 152-53). In ruling on a motion to dismiss, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Iqbal*, 556 U.S. at 678 (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation

omitted).  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability"

generally does not meet the pleading standard.  *See id.* (quoting *Twombly*, 550 U.S. at 557).

Importantly, pleadings filed by *pro se* parties continue to be accorded more deference than

those filed by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  As such, *Twombly* and

*Iqbal* notwithstanding, this Court must continue to "construe [a *pro se* complaint] broadly, and

interpret [it] to raise the strongest arguments that [it] suggests."  *Weixel v. Bd. of Educ.*, 287 F.3d

138, 146 (2d Cir. 2002).

### b.  *Plaintiff's § 1983 Claims*

The elements of a *prima facie* claim under § 1983 depend on the right allegedly violated.

*See Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017).  However, a showing of the defendant's

personal involvement is always required.  *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

A defendant cannot be held liable simply because she holds a position of authority, and as a

matter of law, *respondeat superior* liability is not recognized in the § 1983 context.  *See id.* (citing

*Leonhard v. United States*, 633 F.2d 599, 621 n.30 (2d Cir. 1980)).  The Second Circuit defines

"personal involvement" as "direct participation, or failure to remedy the alleged wrong after

learning of it, or creation of a policy or custom under which unconstitutional practices occurred,

or gross negligence in managing subordinates."  *Id.* (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d

Cir. 1994)).  Thus, to survive a motion to dismiss, Plaintiff's amended complaint must allege

enough facts to support a plausible inference of Governor Hochul's personal involvement.

Critically, as Defendant points out, Plaintiff makes only conclusory statements of

Governor Hochul's involvement.  For example, based on Plaintiff's pleading, it seems his first

attempted contact with Defendant was when he sought protection from a perceived conspiracy.

*See* Dkt. No. 7 at ¶ 115.  When Plaintiff received no response, he decided that Defendant must be

part of the conspiracy. *Id.* at ¶ 116. This sequence of events suggests that Plaintiff initially recognized Defendant's lack of involvement. Relatedly, Plaintiff does not allege any facts showing that Defendant knew about any of the events giving rise to this action. His amended complaint never alleges that Defendant ordered or participated in the traffic stop, learned of the traffic stop, created or enforced a policy authorizing the traffic stop, or negligently managed any Greene County officials at any point. Rather, the pleading seems to target Governor Hochul solely based on her position of authority, which is not a cognizable basis for a § 1983 claim. Thus, Plaintiff's first and third claims against Defendant in her individual capacity must be dismissed for failure to state a claim.

### c. *Plaintiff's § 1985 Claim*

To allege a cause of action for conspiracy to deprive a person of his rights under § 1985, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that [the] defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citation omitted). Simply put, without a meeting of the minds, there can be no conspiracy. Furthermore, conclusory allegations of conspiracy, without properly pled facts supporting an inference of conspiracy, are insufficient. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

Much like his § 1983 claims, Plaintiff's § 1985 claim fails to meet the pleading standard. Again, except for conclusory statements that Governor Hochul was part of a "seditious conspiracy to overthrow the Constitution and violate the Plaintiff's God-given rights," Dkt. No. 7 at ¶ 111, Plaintiff pleads no facts suggesting she was even aware of what happened to him. By extension, Plaintiff never pleads that Defendant had a "meeting of the minds" with Deputy Schrader or any other Greene County employee regarding his traffic citations or impoundment of his van. Even

under the liberalized *pro se* pleading standard, Plaintiff's amended complaint contains nothing to support an inference of conspiracy beyond conclusory statements of belief that Defendant was somehow involved.

As a result, Plaintiff's second cause of action against Defendant in her individual capacity must be dismissed for failure to state a claim.

### d. *Plaintiff's § 1986 Claim*

A cause of action under § 1986 for failure to prevent a conspiracy to deprive a person of civil rights requires a similar showing that the defendant was aware of the alleged conspiracy. *See Buck v. Bd. of Elections of the City of N.Y.*, 536 F.2d 522, 524 (2d Cir. 1976). Relatedly, "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). As already discussed, Plaintiff does not put forward any non-conclusory facts plausibly showing that Governor Hochul knew about the alleged conspiracy or what happened to Plaintiff. Additionally, because Plaintiff's § 1985 claim cannot stand, neither can his § 1986 claim. Therefore, Plaintiff's fourth cause of action against Defendant must be dismissed.

### 3. *Plaintiff's Lack of Standing to Bring Criminal Charges Under the New York Penal Law and 18 U.S.C. § 1589*

In addition to his civil claims against the governor, several of Plaintiff's claims raise criminal allegations under state and federal law. Specifically, Plaintiff alleges that Defendant is guilty of second-degree robbery, third-degree coercion, and official misconduct under the New York Penal Law, as well as violation of a federal statute prohibiting forced labor and involuntary servitude. Dkt. No. 7. Plaintiff's amended complaint also contains a charge of false imprisonment, but as Defendant points out in her

16

motion to dismiss, Plaintiff does not specify whether he makes this allegation in the civil or criminal context. *See id.*; Dkt. No. 17-1 at 22.

Plaintiff's claims under the New York Penal Law and 18 U.S.C. § 1589 must be dismissed because Plaintiff lacks standing to bring criminal charges. As a matter of law, "there is no private right of action to enforce state or federal criminal statutes." *Robinson v. Williams*, No. 6:22-CV-0982, 2023 WL 3352758, *5 (N.D.N.Y. Jan. 12, 2023) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)), *report-recommendation adopted*, *Robinson v. Williams*, No. 6:22-CV-0982, 2023 WL 2986825 (N.D.N.Y. Apr. 18, 2023); *see also Petty v. Bono*, No. 6:22-CV-0620, 2022 WL 2984801, *4 (N.D.N.Y. July 28, 2022) (recommending dismissal of a private party's claims purporting to charge criminal violations of the New York Penal Law and provisions of Title 18 of the United States Code), *report-recommendation adopted*, *Petty v. Bono*, No. 6:22-CV-00620, 2022 WL 17663484 (N.D.N.Y. Dec. 14, 2022). The Second Circuit "[has] long recognized that crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 Fed. Appx. 13, 14-15 (2d Cir. 2006) (citing *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)).

Accordingly, Plaintiff's fifth, sixth, eighth, ninth, and twelfth causes of action must be dismissed for lack of standing. Additionally, his seventh claim (for false imprisonment) must be dismissed on this ground if brought in the criminal context.

### 4. *State Law Claims*

Since Plaintiff has failed to set forth a plausible claim under federal law, and due to the fact that no discovery has occurred in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for declaratory judgment (Dkt. No. 11) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 19-2) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for judicial notice (Dkt. No. 23) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 2, 2025
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

18